# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO PASILLAS,<br><br>        Plaintiff,<br><br>v.<br><br>C/O SOTO,<br><br>        Defendant. | Case No.: 1:16-cv-00487-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 21)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Ernesto Pasillas is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant's motion for summary judgment, filed on February 23, 2018. (ECF No. 21.)

## I.

## RELEVANT BACKGROUND

This case proceeds on Plaintiff's complaint against Defendant Soto for the failure to intervene while Plaintiff was assaulted by another inmate, in violation of the Eighth Amendment. (ECF No. 1.)

Defendant filed an answer to the complaint on May 8, 2017. (ECF No. 16.) On May 9, 2017, the Court issued the discovery and scheduling order. (ECF No. 17.)

As noted above, on February 23, 2018, Defendant filed a timely motion for summary judgment. (ECF No. 21.) Plaintiff filed an opposition, on extension, on April 19, 2018. (ECF No. 24.) Defendant filed a reply on May 1, 2018. (ECF No. 25.) The motion is now deemed submitted, without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

///
///
///

# III.

# DISCUSSION

## A. Summary of Plaintiff's Relevant Allegations

At the time of the events at issue, Plaintiff was incarcerated at Golden State Modified Community Correctional Facility ("Golden State"), in McFarland, California. On February 20, 2015, between 8:40 p.m. and 9:00 p.m., Plaintiff was assaulted by another inmate. (Compl., ECF No. 1, at 4.) The incident took place in front of Defendant, who was on duty at the time. (Id.) While playing Monopoly on the table in front of the podium, an inmate punched Plaintiff in the face. (Id.) Defendant noticed it right away and said, "Cut it out." (Id.)

Surprised, Plaintiff asked the inmate why he did it, but the inmate just punched Plaintiff again. (Compl. 4.) At that point, Plaintiff stood up and backed up towards Defendant, looking and hoping for assistance. (Id.) However, Defendant only radioed for backup once, and just "kept watching the assault in shock." (Id.) After Plaintiff backed up, the inmate came towards Plaintiff and punched him again. (Id.) Plaintiff was scared for his life, and hoped that someone would help, but no one came, even after Defendant radioed for help. (Id.)

After the inmate punched Plaintiff again, the inmate went back to his bed rack in the back of the dorm and Plaintiff thought that after the assault was over. (Compl. 4.) Plaintiff thought that Defendant would take Plaintiff out of the dorm, or get him some help, but she did nothing. (Id.) Defendant "just stood there completely frozen and nervously laughing." (Id.) A minute later, the inmate returned and continued to assault Plaintiff. (Id.) After the inmate punched Plaintiff a few more times, he left to go back to his bed. (Id.) Plaintiff was scared and stunned because no one was coming to help. (Id.)

A few minutes later, to Plaintiff's surprise, the inmate came back another time and continued the assault. (Compl. 4.) This time, the inmate did not stop punching until Plaintiff was knocked down and bleeding profusely above his left eye. (Id. 4-5.) The inmate returned to his bed, and Plaintiff finally received help from another inmate, who brought Plaintiff his shirt to stop the bleeding, and a chair to sit on. (Id. 5.)

///

3

More than five minutes passed from the time the first punch was thrown, but no officer had arrived to help. (Id.) Defendant kept watching in shock as the other inmate helped Plaintiff and was preparing to clean up the blood. (Id.)

As Plaintiff got up from the chair, the attacking inmate came back and was ready to continue his assault. (Compl. 5.) By luck, Officer Castro was recalling the yard and noticed Plaintiff with blood on his face. (Id.) Officer Castro came in the dorm, asked what happened, and then radioed for help. (Id.) Plaintiff noticed the attacking inmate going back to his bed when he saw that Officer Castro was present. (Id.)

Finally, more officers came and Plaintiff was taken to a holding cell. (Compl. 5.) Before they took him away, Plaintiff heard one of the officers ask Defendant why she did not radio for help or backup. (Id.) Defendant told them that she did. (Id.) However, even after Defendant radioed for help, no officer was aware of the assault. (Id.)

After Defendant noticed that help did not arrive, she did absolutely nothing to help, or try to get help from another officer nearby. (Id.) If Officer Castro had not recalled the yard and noticed Plaintiff's face, Plaintiff would have been more seriously injured. (Id. 5-6.) When Plaintiff was taken to the holding cell, Lt. Hogan and other officers stayed in the pod to investigate the incident. (Id. at 6.)

Plaintiff was examined by medical staff that night, and was found to have suffered a deep laceration above his left eye and on his ear. (Compl. 6.) Plaintiff also had severe head trauma and swelling all over his face and head. (Id.) The medical staff gave Plaintiff some ice and a bandage, and suggested that Plaintiff be sent to another prison for stitches and further evaluation. (Id.) Plaintiff chose not to go, however, because he "just wanted the night over with and [to] go back to bed." (Id.) Plaintiff was permitted to return to his dorm around 12:15 a.m. (Id.) Plaintiff was notified that he would not receive a Rules Violation Report because he never threw a punch. (Id.) The inmate who attacked Plaintiff was moved from Golden State. (Id.)

**B. Statement of Material Undisputed Facts**

On February 20, 2015, Defendant was assigned to as a Dorm Officer for the A-4 Dormitory. Defendant was responsible for overseeing approximately 100 inmates who were

1  housed in the A-4 Dormitory. (Soto Decl., ECF No. 21-2, Ex. A, ¶ 4.) On that day, Defendant observed inmate McAffee and Plaintiff playing board games at a table approximately five feet away from the podium where she was standing. (Id. at ¶ 5.)

At approximately 8:29 p.m., Defendant heard inmates McAffee and Plaintiff start arguing with each other, and inmate McAffee began to strike Plaintiff with his fist in his upper torso and head area. (Soto Decl. ¶ 6.) Pursuant to her training, Defendant gave a direct order for inmate McAffee and Plaintiff to stop fighting and get down. She then announced a Code One (1) via institutional radio, which is the code for a fight. Due to what Defendant later learned appeared to be a radio malfunction, no initial response arrived. (Id. at ¶ 7; Compl. at 4.)

Defendant continued to give direct orders for the inmates to stop fighting; however, inmate McAffee refused to comply with her direct orders and continued to strike Plaintiff in the head area. Plaintiff attempted to block the punches. Defendant heard Plaintiff say to Inmate McAffee, "What the f**ck did I say?" (Soto Decl. ¶ 8.) Inmate McAffee at one point walked away and Defendant thought the incident was over. However, inmate McAffee immediately returned and punched Plaintiff another time, despite Defendant's verbal commands to stop and get down. Defendant observed Plaintiff fall to the ground, and inmate McAffee walk away. (Id. at ¶ 9.)

The entire incident occurred very quickly and lasted approximately one minute. The incident is documented on surveillance video. (Soto Decl. ¶ 10; Exh. B, video surveillance footage of Feb. 20, 2015 incident, lodged in court records.)

Based on her training, Defendant is supposed to give verbal commands to the inmates to stop and get down to the ground and radio for back-up if she witnesses an altercation. Defendant is instructed not to intervene or use any type of force, as Correctional Officers at Golden State are not equipped with O.C. Spray, batons, or any other types of weapons. (Soto Decl. ¶ 11.)

During the February 20, 2014 incident, Defendant repeatedly instructed inmate McAffee and Plaintiff to get down to the ground and stop. She was unable to do anything else, such as physically intervene in the matter, because it would have been inconsistent with her training and unsafe for her to do so. Further, she could not leave the dormitory while the incident was

5

occurring to find back-up, because leaving the dayroom with no correctional officers could have allowed the situation to escalate and jeopardize the safety all inmates housed in the dormitory. (Soto Decl. ¶ 12.)

After the incident, Defendant made sure that Plaintiff was okay. Although Plaintiff had a small laceration on his forehead, he was coherent and was able to stand. Another inmate came up to the area to provide Plaintiff with a shirt to wipe his face. (Soto Decl. ¶ 13.) Once it appeared that inmate McAffee was not going to return to the area, Defendant had Plaintiff stand near her as Defendant opened the door of the A-4 dorm to look for assistance, while still maintaining a visual of the interior of the dorm to ensure that there were no other incidents. (Soto Decl. ¶ 14.)

Within a few minutes, Officer Santana arrived at the A-4 Dormitory. Officer Santana directed Plaintiff to the "A" side main hallway podium and handcuffed Plaintiff. Officer Santana then escorted him out of A-4 Dormitory to Receiving and Release, where he was placed in Transit Holding Cell #5, and where an unclothed body search was conducted. (Soto Decl. ¶ 15.)

Officers Plum and DeGuzman also responded to the A-4 Dormitory. Defendant also informed the officers about the incident. (Soto Decl. ¶ 16.) Officer Plum proceeded to inmate McAffee's location at bed #16 and gave inmate McAffee a verbal command to turn around and cuff up, which Inmate McAffee complied with. Officer Plum and Officer DeGuzman then escorted inmate McAffee to Receiving and Release, where he was placed in Transit Holding Cell #1, and where an unclothed body search was conducted. (Soto Decl. ¶ 17.)

Officer Guinto took photographs of both inmates and their injuries, and Registered Nurse Simpao conducted a medical evaluation [Form 7219] on both inmates. (Soto Decl. ¶ 18.) Prior to the incident, Defendant had no reason to know that inmate McAffee would batter or harm Plaintiff in any way. Defendant was not aware of any problems specifically between these inmates. (Soto Decl. ¶ 19.) Defendant's intention throughout the incident was always to preserve order, and protect the safety of all inmates, including Plaintiff, the staff, and herself. (Soto Decl. ¶ 20.)

///

C.     **Parties Arguments**

Defendant argues that there is no evidence that she knew of any excessive risk to Plaintiff's safety and disregarded that risk during the February 20, 2014 incident. Instead, the evidence demonstrates that she acted in accordance with her training, both to protect Plaintiff, herself, and the other inmates, and to regain control of the facility. As the incident only lasted about one minute in total, and because Defendant was alone, there was no more that she could do, such as physically intervene in the matter. This would have been inconsistent with her training and endangered the safety of staff and inmates.

In his opposition, Plaintiff admits that Defendant told the attacking inmate to stop, and radioed for help. Nevertheless, he argues that the officers did not come to assist after Defendant used her radio, and that Defendant should have ordered all inmates to "rack it up" once the attack began. (Pl.'s Opp'n, ECF No. 24, at 2.)

In reply, Defendant argues that she cannot be held liable for the failure of other officers to respond, particularly as the undisputed cause of the immediate failure to respond is that her radio had malfunctioned, through no fault of her own. Further, Plaintiff's unsupported speculations and disagreements about how Defendant should have responded do not show any violation of his Eighth Amendment rights.

D.     **Analysis**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994).

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer, 511 U.S. at 832–33; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). Thus, prison officials are required to protect inmates from violence by other prisoners. Farmer, 511 U.S. at 833.

To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." Labatad, 714 F.3d at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)). A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837. Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," a plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis, and citations omitted).

In this case, there is no dispute that Defendant had no prior knowledge of any risk that inmate McAffee would attack Plaintiff on February 20, 2014, and Plaintiff does not claim that it was a planned attack of which Defendant had any prior knowledge. The risk to Plaintiff's safety was from an assault that happened in an instant, and there is no dispute that Defendant gave verbal commands for it to stop, and attempted to radio for backup, as she had been trained to do. This does not show any deliberate indifference by Defendant. Instead, the undisputed facts show an attempt by Defendant to protect Plaintiff, and to gain control over the safety and security of the institution.

Plaintiff asserts that four minutes passed before other officers arrived at the scene after the attack, and that an officer asked Defendant whether she radioed for help. These facts are not sufficient to create a triable issue of fact as to whether Defendant was deliberately indifferent to a risk to Plaintiff. It is undisputed that Defendant did attempt to radio for help, and that it was not successful due to a radio malfunction, not through any failure to act by Defendant.

"What is reasonable depends on the circumstances, which normally constrain what actions a state official can take." Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014). Here, the circumstances of the assault on Plaintiff were that Defendant was the only officer in the area, and that she had no batons, O.C. pepper spray, or any other weapons or means to gain control of the fight other than to give verbal orders and radio for assistance. Plaintiff may speculate that Defendant could physically intervene, but the undisputed evidence is that Defendant took the

actions that she was trained to do in case of an inmate fight, that she was trained not to intervene when alone as doing so could risk the safety of herself and the other staff and inmates, and that she could not leave to get help because she was the only officer in the area. Further, the evidence is that once other offers showed up, the brief incident was over, and Plaintiff was medically treated.

Plaintiff also asserts that Defendant should have given a verbal order to "rack it up" to all inmates so that they could not be walking around and watching the events unfold. This speculation regarding possible alternative verbal orders Defendant might have given is not relevant, and does not show any deliberate indifference by Defendant. Plaintiff has not claimed, nor can he show, that other inmates watching the assault or going about their normal routine as he waited for help, caused him any harm. As noted above, the undisputed evidence is that within a few minutes, the assault ended, other officers arrived, Plaintiff and inmate McAffee were escorted to holding cells, and Plaintiff received medical treatment. That Defendant took no further action after giving orders to stop the fighting and radioing for help, including that she did not give orders to "rack it up," does not show that she failed to protect Plaintiff or violated his constitutional rights.

Based on these findings, Defendant is entitled to judgment as a matter of law. Therefore, the Court will recommend that Defendant's motion for summary judgment be granted.

## IV.

## RECOMMENDATIONS

Accordingly, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment be granted; and

2. Judgment be entered in favor of Defendant.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 12, 2018**

UNITED STATES MAGISTRATE JUDGE